J-S15041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANDREW YANG AND AMY YANG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROCHELLE SADY AND ALON FAIN | : | |
| | : | |
| Appellant | : | No. 2523 EDA 2025 |

Appeal from the Judgment Entered December 23, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2022-03334

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 6, 2026**

Appellant, Rochelle Sady and Alon Fain, appeals from the judgment entered in accordance with the Court of Common Pleas of Montgomery County's Memorandum and Decision, granting in part and denying in part Appellee Andrew and Amy Yang's Complaint – Action to Quiet Title.  After careful consideration, we affirm.

We briefly summarize the facts adduced at the parties' three-day bench trial held from May 13 to 15, 2025.  Sady and Fain purchased their residential property at 107 Ashmead on November 5, 2020.  About one year later, on November 12, 2021, the Yangs purchased their residential property at 111 Ashmead.  Five months into their residency, the Yangs filed a March 10, 2022, Complaint in Quiet Title in which they alleged Sady and Fain were using lands

_____

[*] Former Justice specially assigned to the Superior Court.

belonging to 111 Ashmead—including the west portion of the Subdivision's paved Northern Driveway[1] and the paved Connecting Spur[2] traversing the Subdivision's southern grounds—without right or permission to do so. On April 8, 2022, Sady and Fain filed an Answer, New Matter, and Counterclaim asserting that their right to use the Northern Driveway (West) derives from existing easements by necessity, by implication, and/or by prescription.

The trial court presided over a three-day non-jury trial in May 2025. On August 20, 2025, the trial court reached a verdict and filed a "Decision" concluding that the Yangs' property at 111 Ashmead is subject to a prescriptive easement as the servient estate to 107 Ashmead, but only with respect to the Common Driveway and the Connecting Spur. Specifically, the trial court determined that Sady and Fain and their heirs, successors, and assigns, as the owners of 107 Ashmead, the dominant estate, hold a prescriptive easement to use the contiguous paved roadway segments consisting of the Common Driveway at the Subdivision's west-end entrance, the "Connecting Spur" emanating from the Common Driveway and running

_____

[1] Hereinafter, "Northern Driveway (West)."

[2] The Subdivision's paved roadway configuration is roughly Y-shaped. From the public roadway, one enters the Subdivision at its west end, which is entirely owned by 111 Ashmead, and drives eastward on a relatively short, straight "Common Driveway" that eventually forks into two paved roadways, the "Northern Driveway," which runs in a northeast direction across 111 Ashmead lands, and the "Common Spur," which runs in an east-by-southeast direction across 111 Ashmead lands until it reaches the Subdivision's easternmost property at 107 Ashmead.

eastward along the southern lands of 111 Ashmead to the "South Driveway," which is situated on Sady and Fain's property on 107 Ashmead and leads to their home, for both vehicular access to their property and trash collection, as their predecessors at 107 Ashmead had done.

The trial court, however, denied the existence of an easement in favor of 107 Ashmead encumbering the Northern Driveway (West) situated on the lands of 111 Ashmead. In reaching this conclusion, the trial court determined that Sady and Fain's evidence was insufficient to prove that any one previous owner or any series of previous owners of 107 Ashmead enjoyed a continuous and uninterrupted 21-year open, adverse, and notorious use of the Northern Driveway (West), and given such evidence concluded that 111 Ashmead was not a servient estate to 107 Ashmead with respect to the Northern Driveway (West).

The trial court summarizes the pertinent underling facts and conclusions of law, as follows:

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs[/Appellees] Andrew and Amy Yang, and Defendants[/Appellants] Alon Fain and Rochelle Sady, are the owners and residents of adjoining parcels of land in Cheltenham Township, Montgomery County, Pennsylvania. [The Yangs] are the owners of 111 Ashmead Road . . . ("Yang Property"), which they purchased on November 12, 2021. [Sady and Fain] are the owners of 107 Ashmead Road. . . ("Sady-Fain Property"), which they purchased on November 5, 2020.

As part of their purchase of [111 Ashmead, the Yangs] obtained title insurance and were provided with a title commitment. Neither the title commitment nor the title itself contains any

- 3 -

express easements to the benefit of the Sady-Fain property [at 107 Ashmead.]

There is one driveway on the Yang Property that feeds both [their property at] 111 Ashmead [] and [the Sady-Fain property at] 107 Ashmead [].  The driveway diverts to the Sady-Fain Property [at 107 Ashmead] and is the only access [Appellants Sady and Fain] have for egress to and from Ashmead Road [at the Subdivision's entrance/exit].  That portion of the Driveway which leads to the Sady-Fain Property is referred to as the Connecting Spur.  There is a "bump-out" on the southern side of the Connecting Spur that can accommodate parking for two vehicles.

Since [the Yangs] purchased [111 Ashmead], [Sady and Fain] have accessed [their property at 107 Ashmead] by using the Connecting Spur.  [They] have also parked their vehicles on the bump out.  [They] have also walked along the paved northern boundary ("Northern Driveway") of the Yang Property both with and without their dog.

Shortly after the Yangs purchased their property, disputes arose between the parties regarding [Sady's and Fain's] use of the driveways and Connecting Spur on the Yang Property.

On March 10, 2022, [the Yangs] filed a Complaint against [Sady and Fain].  Count 1 of the Complaint [sought] to quiet title to the portion of the creek-side drive, also called the Northern Driveway or Melrose Right of Way, which is on 111 Ashmead . . . .  Count II of the Complaint [sought] to prevent [Sady and Fain] from using any portion of the driveway on 111 Ashmead Road, effectively requiring [Sady and Fain] to construct a new driveway to connect their residence with Ashmead Road.  [The Yangs] alleged that [Sady and Fain] have no right to use any portion of [the] 111 Ashmead [lands] without permission from [the Yangs] and which [the Yangs] refuse to give.

[Sady and Fain] filed their Answer and New Matter Counterclaim on April 8, 2022, asserting an easement by necessity, implication, and/or prescription to use the Northern Driveway and the other portions of the driveway on  111 Ashmead . . . .  [Sady and Fain] alleged that constructing a new driveway from Ashmead Road to their residence would be both unsafe due to the curve and slope of [the public thoroughfare, Ashmead Road] and prohibitively expensive.

A bench trial was held from May 13, 2025, to May 15, 2025. Following the trial, both parties submitted proposed findings of fact and conclusions of law. Based on the evidence presented at trial, the [trial court made 157 Findings of Fact pertaining to the two properties (dates of construction, metes and bounds, and features of surrounding terrain and improvements thereto); their respective chains of title; the original Subdivision property plans from the 1950s, the architectural plans for 107 and 111 Ashmead from the 1950's, the historic use of the properties by their owners, and expert testimony regarding the feasibility of constructing a driveway on 107 Ashmead and the feasibility of constructing a walkway from the Northern Driveway to 107 Ashmead to permit Sady and Fain to access the Northern Driveway without crossing over the Yangs' property at 111 Ashmead)].

. . .

[Following the trial court's comprehensive section "**Findings of Fact**" which include enumerated findings under subsections entitled, "The Parties and Properties" (26 findings of fact), "Chains of Title" (10 findings of fact), "Property Plans" (nine findings of fact), "The "The Daub Plan" (nine findings of fact), "Historic Use of the Properties by Owners" (96 findings of fact), and "Expert Testimony" (six findings of fact), The trial court provides a "Summary of Factual Findings," as follows:]

## II.    F.  Summary of Factual Findings

158. There is no evidence as to exactly when the Common Driveway, Connecting Spur, Circular Driveway, or Southern Driveway were built.

159. There are no express easements recorded concerning the right of the owners of 107 Ashmead to use any of the driveways on 111 Ashmead.

160. It was the intent of the Daubs[, Ann Marie and George Daub, who in 1953 purchased the grounds from Melrose Golf Club and in 1955 subdivided the land into two properties now known as 107 Ashmead Road and 111 Ashmead Road] that . . . [the 1955 purchasers of 107 Ashmead, Erica and Walter Baumann,] would have an easement over the Common Driveway and Connecting

Spur to access 107 Ashmead, but no such easement was ever recorded.

161. The Daubs did not use the Northern Driveway for access to the park to the east of 111/107 Ashmead between 1953 and 1955, prior to subdivision of the property, as it was not a public park until 1964.

162. There is no evidence that the Daubs subjected any part of the property, from 1953-1955 prior to subdivision, to a use in favor of another part of the property.

163. There is no evidence that the Daubs used the Northern Driveway for recreational use from 1953 to 1955 prior to subdivision of the property into the parcels now known as 111 Ashmead Road and 107 Ashmead Road.

164. There is insufficient evidence to determine when the owners of 107 began using the Northern Driveway, Common Driveway, Connecting Spur, or Circular Driveway and whether that use was with or without the permission of the owners of 111 Ashmead.

165. Robert Baumann[, the son or Erica and Walter Baumann,] could not testify as to whether any owner of 111 Ashmead had given his parents . . . , as owners of 107 Ashmead, permission to use the driveways on 111 Ashmead.

166. Robert Baumann's personal knowledge of how the owners of 107 Ashmead used the driveways on 111 Ashmead did not span a period of 21 years as it was his residence from 1964-1986, the first several years of which he was an infant and the last four years of which he was largely living on campus at the University of Delaware.

167. From 1996 until the institution of this suit, all owners of 107 Ashmead have openly used the Common Driveway and Connecting Spur [situated on the Southern grounds of the Subdivision] to access 107 Ashmead without permission or objection from any owner of 111 Ashmead.

168. Since at least 1996 all owners of 107 Ashmead, except [Sady and Fain], have used the Northern Driveway (West) with the permission of Randea Gordon [a prior owner/resident of 111 Ashmead].

169.  Since 1980 the owners of 107 Ashmead have openly walked their trashcans down the Southern Driveway and Connecting Spur and placed their trashcans on the Common Driveway. For collection by the Township, without permission from the owners of 111 Ashmead.

170.  The owners of 107 Ashmead have always shared the cost of repairing and maintaining the driveways on 111 Ashmead with the owners of 111 Ashmead with the exception of Randea Gordon's repaving of the driveways on 111 Ashmead prior to selling the property in 2021.

171.  There is not sufficient evidence to support a finding that a "gentlemen's agreement" existed between the owners of 111 Ashmead and 107 Ashmead regarding the use of the driveways on 111 Ashmead by the owners of 107 Ashmead.

172.  The owners of 107 Ashmead have seldom parked their cars on 111 Ashmead and almost always with permission from the owners of 111 Ashmead.

173.  The slope between the residence on 107 Ashmead and the Northern Driveway is steep and wooded.

174.  Exiting the Common Driveway is hazardous as it is located at the bottom of the hill near Tookany Creek, with visibility decreasing the further south, up the hill, one moves due to the slope and curve of Ashmead Road.

175.  Entering the Common Driveway at night can be hazardous if anyone is walking on the Common Driveway at night as the visibility of the Common Driveway from Ashmead Road is poor due to poor lighting on Ashmead Road.

## III.    CONCLUSIONS OF LAW

### A. Prescriptive Easements

. . .

### Common Driveway and Connecting Spur: Vehicular Access to Southern Driveway

. . .

200. The use of the Common Driveway and Connecting Spur by the owners of 107 Ashmead was adverse to the interests of the owners of 111 Ashmead.

201. The period of adverse enjoyment of the Comon Driveway and Connecting Spur by the owners of 107 Ashmead for vehicular access to and from the Southern Driveway exceeds the twenty-one year prescriptive period.

202. The property located at 111 Ashmead Road . . . is subject to an easement as the servient estate whereby the owners of 107 Ashmead Road . . . , the dominant estate, have an easement to use the Common Driveway and Connecting Spur for vehicular access to and from the Southern Driveway.

. . .

**Common Driveway and Trash Collection**

203  From 1980 to present the owners of 107 Ashmead have taken their trash cans down the Southern Driveway, across the Connecting Spur, and to the Common Driveway for collection by the Township.

204.  From 1989-2021, Randea Gordon never gave any owner permission to use the Connecting Spur or Common Driveway to transport their trash cans and leave them for collection by the Township.

205.  Even if the Daubs had permitted the Baumanns to use the Common Driveway and Connecting Spur to transport and leave their trash cans for collection , that license would have terminated in 1989 with the sale of 111 Ashmead to Grant Rawdin and Randea Gordon (f/k/a Randea Rawdin).

206.  Randea Gordon never objected to the use of the connecting Spur and Common Driveway by any owner of 107 Ashmead to transport their trash cans and leave them for collection by the Township.

207.  The use of the Connecting Spur and Common Driveway by the owners of 107 Ashmead has been open and notorious,

sufficient to put the owners of 11 Ashmead on notice that the owners of 107 Ashmead were using the Common Driveway and Connecting Spur as if they were their own.

208. The use of the Common Driveway and Connecting Spur by the owners of 107 Ashmead was adverse to the interests of the owners of 111 Ashmead.

209. The property located at 111 Ashmead Road . . . is subject to an easement as the servient estate whereby the owners of 107 Ashmead Road . . . being . . . the dominant estate, have an easement to take their trash cans across the Connecting Spur and Common Driveway, and to leave them on the Common Driveway for collection by Cheltenham Township. . . .

**Common Driveway, Connecting Spur, and Northern Driveway (West)**

210. Defendants [Sady and Fain] have failed to show by clear and positive evidence that the owners of 107 Ashmead have adversely used the Northern Driveway(West) for an uninterrupted period of twenty-one years.

211. 111 Ashmead Road is not burdened by a prescriptive easement benefiting 107 Ashmead for access to the Northern Driveway (East).

**B. Easements by Implication – Intent of the Daubs upon Subdivision and Transfer**

212. "An easement by implication can be found to exist where the intent of the parties is demonstrated by the terms of the grant, the property's surroundings and any other res gestae of the transaction." ***Phillippi v. Knotter***, 748 A.2d 757, 761 (Pa. Super. 2000).

**The Common Driveway and Connecting Spur:**

213. Here, the intent of the Daubs and Baumanns is clearly demonstrated where, a month before the Daubs sold 107 Ashmead to the Baumanns, George Daub himself drafted an architectural drawing, i.e., the Daub Plan, depicting a driveway solely meant to provide access to 107 Ashmead crossing 111 Ashmead.

214. The "surroundings of the land" in this case, namely the steep slope and curve of Ashmead Road and the difficulty thereby created in constructing a driveway on 107 Ashmead, also weigh in favor of finding that it was the intent of the Daubs to grant the Baumanns an easement over 111 Ashmead Road for access to 107 Ashmead Road.

215. The Daub plan, the topography of the properties and Ashmead Road, the Daub's close relationship with the Baumanns, and Ann Marie Daubs' belief that the Baumanns had an easement over the Common Driveway and Connecting Spur, is sufficient evidence to find that 111 Ashmead Road is burdened by an easement over the Common Driveway and Connecting Spur for the benefit of 107 Ashmead Road.

216. The property located at 111 Ashmead Road . . . is subject to an easement as the servient estate whereby the owners of 107 Ashmead Road . . . being . . . the dominant estate, have an easement to use the Common Driveway and Connecting Spur for vehicular access to and from the Southern Driveway.

Trial Court Memorandum Decision, 8/20/25, 1-3, 17-19, 21-23.

Sady and Fain filed their appeal from the trial court's August 20, 2025, Decision. Initially, this Court issued an Order in the form of a Rule to Show Cause observing that we were without jurisdiction over the matter because, in a quiet title action, an appeal must be taken from a final judgment entered on the Decision granting relief to a plaintiff and not from the Decision itself. *See* Pa.R.Civ.P. 1066(b); *see also Durante v. Polanco*, Nos. 114 & 1149 EDA 2024, 2025 WL 1245723 (Pa. Super., filed Apr. 29, 2025) (stating "[i]n a quiet title action, the judgment of the court entered following disposition of the action after a bench trial (*i.e.*, decision/verdict) is final for purposes of appeal"); *Johnston the Florist*, *Inc. v. TEDCO Constr. Corp*, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (stating, entry of judgment is a prerequisite

to the exercise of this Court's jurisdiction); ***Funk v. Empfield***, 281 A.3d 315, 319 (Pa. Super. 2022) (stating, "[i]n civil matters, an appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-trial motions, not from the order denying post-trial motions" (citation, original quotation marks, and original brackets omitted)).

Accordingly, we directed Sady and Fain to praecipe the trial court prothonotary to enter judgment on the Decision of the trial court, after which they were to file a certified copy of the trial court docket reflecting the entry of the judgment, all within 14 days of our order. Pursuant to our order, Sady and Fain effectuated the entry of Judgment on the decision of the trial court and corrected the trial court docket, which enabled correction of the caption so that it indicates that the present appeal is taken from the judgment entered December 23, 2025. We discharged the rule to show cause and permitted the appeal to proceed, with the caveat that the merits panel nonetheless may address the propriety of the appeal. *Per Curiam* Order, filed 12/30/2025.

The Yangs have filed a motion to quash in which they contend this Court is without jurisdiction to entertain the appeal because Sady and Fain filed their notice of appeal from the trial court's August 20, 2025, "Decision" denying or granting the parties' various claims rather than from the subsequent order which reduced the Decision to an appealable order. We decline to quash the appeal for want of jurisdiction and, instead, treat Sady and Fain's notice of appeal as having been filed on the date of the trial court's order in which it entered judgment. ***See Martin v. Chevrolet***, --- A.3d.----, No. 302 WDA

- 11 -

2025, 2026 WL 1075068 (Pa. Super. filed April 21, 2026) (citing **Am. and Foreign Ins. Co. v. Jerry's Sport Ctr.**, **Inc.**, 948 A.2d 834, 842 n.1 (Pa. Super. 2008), **aff'd**, 606 Pa. 584, 2 A.3d 526 (2010)); **see also** Pa.R.A.P. 905(a)(5) (stating, "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

In Sady and Fain's "Brief of Appellants," they raise two questions for our review:

1. Whether the trial court committed an error of law and/or abused its discretion in finding that the Appellants do *not* have any rights in—and shall not trespass upon or interfere with—the ("West") portion of the Northern Driveway?

2. Whether the Trial Court committed an error of law and/or abused its discretion in ignoring the fact that a road existed for the benefit of Daub and appurtenant to his successors-in-title, including the Appellees, based upon . . . the uncontradicted, credible and competent evidence that established via (a) the Daub Plan, (b) the Mebus Plan, and [(c)] the findings of expert witness, Robert E. Blue (P.E. and Land Surveyor), that the RESERVATION retained by Melrose Country Club, to access its property from Ashmead Road, via the entirety of the Northern Driveway which Melrose Country Club deeded to the Daubs who were the common predecessor in title to both Appellants and Appellees?

Brief of Appellant, at 7.

First, Sady and Fain contend that the trial court erred and/or abused its discretion when it found that they possess no right to use the Northern Driveway (West) situated on the Yang's 111 Ashmead property and entered

an order prohibiting them from trespassing or interfering with the Yang's exclusive rights therein.  We disagree.

> When reviewing a trial court's decision following a nonjury trial, "[w]e must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error." ***Tri-State Auto Auction, Inc. v. Gleba, Inc.***, 257 A.3d 172, 184 (Pa. Super. 2021) (citation omitted).  "[W]e give great deference to the factual findings of the trial court." ***Id.*** (citation omitted).  "For discretionary questions, we review for an abuse of that discretion" and for "pure questions of law, our review is de novo." ***Id.*** (citation omitted).
>
> "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented." ***True R.R. Assocs., L.P. v. Ames True Temper, Inc.***, 152 A.3d 324, 339 (Pa. Super. 2016) (quotation marks and citation omitted).

***Brennan v. Stover***, 352 A.3d 947 (Pa. Super. 2025)

Our standard of review in non-jury trials "is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law."  Further, evidence must be considered "in the light most favorable to the verdict winner," and the decision of the trial court may only be reversed "where the findings are not supported by the evidence of record or are based on an error of law." ***Century Indemnity Company v. OneBeacon Insurance Company***, 173 A.3d 784, 802 (Pa. Super. 2017) (quoting ***Skiff re Bus., Inc. v. Buckingham Ridgeview, LP***, 991 A.2d 956, 962 (Pa. Super. 2010)).

According to Sady and Fain, the mid-1950's subdivision plan(s) as well as the Daub Architect's Plan for the triangular parcel that would encompass

both 107 and 111 Ashmead reflected the intent to provide future owners of the Subdivision's easternmost property, 107 Ashmead, the prescriptive right to travel the entirety of both roads or "driveways"[3] emanating from the Common Driveway at the beginning of the west-end entrance/exit of the Subdivision. From the Common Driveway, a wishbone-shaped roadway design emerges, with the "Northern Driveway" running easterly across the northern grounds of, and terminating on, 111 Ashmead, and with the "Common Spur" running easterly across the southern grounds of 111 Ashmead until it reaches the boundary between 111 Ashmead and 107 Ashmead, at which point the roadway name changes to the Southern Driveway, which leads to the 107 Ashmead residence.

Specifically, Appellants Sady and Fain assert that the intent to provide owners of 107 Ashmead with the right to use the Northern Driveway (West) for recreation, walking, access to the Tookany Creek, and vehicular access to Ashmead Road is not only manifest in the Subdivision plans but also effectuated by a multi-decades, unbroken chain of their predecessors-in-title at 107 Ashmead, all of whom regularly used the entire length the Northern

_____

[3] The trial court and the parties applied the "Southern Driveway" moniker somewhat differently, as the parties used it to identify the whole length of the paved road running easterly from the subdivision's entrance and Common Driveway to the easternmost grounds of 107 Ashmead while the trial court identified it as the final segment of the road beginning with the "Connecting Spur" that emanates from the Common Driveway and ends when reaching the lands of 107 Ashmead, at which point the "Southern" or "South" Driveway" name applies as the paved road continues across 107 Ashmead grounds towards the residence situated there.

Driveway—both the "West" portion traversing 111 Ashmead and the "East" portion traversing their own property at 107 Ashmead—openly, notoriously, and without permission from the late 1950s to the time of Sady and Fain's 2021 purchase.

The trial court, in its role as finder of fact, however, rejected the sufficiency of the evidence that Appellants Sady and Fain presented in support of both their adverse use/prescriptive easement claim, which was based on an alleged unbroken chain of their predecessors' open, notorious, and adverse use of the Northern Driveway (West), and their implied easement claim based on the original intent and purpose of the driveways. The trial court focused first on the distinction between the original purposes of the "Connecting Spur" and the "Northern Driveway," respectively. As noted, each stemmed from the Common Driveway at the Subdivision's west entrance/exit and crossed 111 Ashmead in an eastward direction, with the Northern Driveway running along 111 Ashmead's northern grounds and the Connecting Spur running along 111 Ashmead's southern grounds. The trial court found that the record supports the conclusion that only the Connecting Spur was intended to provide access to 107 Ashmead:

> Here, the intent of the Daubs and Baumanns is clearly demonstrated where, a month before the Daubs sold 107 Ashmead to the Baumanns, George Daub himself drafted an architectural drawing, *i.e.*, the Daub Plan, depicting a driveway solely meant to provide access to 107 Ashmead crossing 111 Ashmead.

The "surroundings of the land" in this case, namely the steep slope and curve of Ashmead Road and the difficulty thereby in constructing a driveway on 107 Ashmead, also weigh in favor of finding that it was the intent of the Daubs to grant the Baumanns an easement over 111 Ashmead Road for access to 107 Ashmead Road.

. . .

Unlike the Common Driveway and Connecting Spur, there is no evidence that the Daubs intended to grant the Baumanns access to the Northern Driveway (East) by crossing 111 Ashmead and via the Northern Driveway (West).

Accordingly, 111 Ashmead is not subject to an easement by implication, based on the Daub's intent upon subdivision and transfer to the Baumanns, for the benefit of the owners of 107 to access the Northern Driveway (East) by crossing 111 Ashmead and the Northern Driveway (West).

TCO at 23 (¶¶ 213, 214, 217, 218).

Before turning to Sady and Fains' argument that 111 Ashmead was subject to a prescriptive easement created by an adverse, open, notorious, and continuous and uninterrupted subservient use in favor of 107 Ashmead for a period of twenty-one (21) years, we note that the trial court first agreed with Sady and Fain that there was no presumption that the initial use of the Subdivision's driveways by the first 107 Ashmead predecessor, the Baumanns, was by permission of the Daubs or the consequence of a special relationship between them simply because they referenced the Daubs by pseudo-familial titles "Uncle George" and "Aunt Nancy." TCO at 20 (¶¶ 190-191).

Nevertheless, the trial court examined the evidence presented regarding the 41 years, from 1955-1996, in which Walter Baumann and his family lived at 107 Ashmead, and it found that Sady and Fain failed to meet their burden

- 16 -

as the party asserting the easement to establish the elements of an easement by proof that is clear and positive. TCO at 20 ¶¶ 184-187 (citing **Adshead v. Sprung**, 375 A.2d 83, 84 (Pa. Super. 1977)). Specifically, as discussed *supra*, the trial court determined they failed to produce evidence showing either when such alleged prescriptive easement or adverse use of the Northern Driveway (West) began during the Baumanns' term or how long it may have lasted.

This was so because their adult son, Robert Baumann, who testified at trial, could not confirm that his family enjoyed a continuous 21-year span of open and adverse recreational use of the Northern Driveway (West), as he was just a child in the mid-to-late 1960s, was away at a four-year college during the mid to late 1980s, and post-graduation ventured from home permanently to begin his professional career. N.T., 8/2/2024, 7-8. The trial court found that "[i]t is unclear whether [subsequent 111 Ashmead owner] Randea Gordon gave Walter Baumann permission to use the Northern Driveway (West)." TCO, at 11 ¶ 82. "Since at least 1996 all owners of 107 Ashmead, except Defendants, have used the Northern Driveway (West) only with the permission of Randea Gordon." TCO at 18 ¶ 168.

Appellants Sady and Fain argue herein that even if the Baumann evidence were insufficient they still met their burden to establish a 21-year unbroken chain of adverse, open, and notorious use by introducing the testimony of subsequent 107 Ashmead predecessors in interest Dr. Lorinda Berger (1996-2005), Ronald Schindlinger (2006-2012), Gil Rodriguez (2012 to 2020), and ending with Sady and Fain. Dr. Berger testified that she

continuously used the entire Northern Driveway (West) for the nine years, from October 1996 until 2005, when the Yang family purchased 111 Ashmead.

Appellants Sady and Fain argue that the testimony supplied by the successive post-Baumann owners of 107 Ashmead owners, each of whom testified that they did not remember Randea Gordon granting them permission to use the Northern Driveway (West) on her property, satisfied their burden at trial to prove by a preponderance of the evidence that a prescriptive easement in 107 Ashmead's favor was established by the time they purchased it in 2020. The trial court erred, they maintain, when it credited the testimony of Randea Gordon, the owner and resident of 111 Ashmead for 31 years, from 1989 to 2021, that it was her understanding during the relevant time that owners of 107 Ashmead could use the Northern Driveway (West) only with her permission, and she acted in accordance with this belief.

Randea Gordon testified that she always had brought brownies to Appellants' predecessors at 107 Ashmead when they moved in and, during her greeting, would tell them that she was the owner of the West part of the Northern Driveway but she welcomed them to walk on it. N.T. at 129.[4] Though Dr. Berger did not specifically recall such an occurrence with Randea Gordon, she admitted that was something that Randea Gordon would have said. N.T. at 64.

_____

[4] The trial court concluded that it was unclear whether Randea Gordon made a similar statement granting permission to use the Northern Driveway (West) to Walter Baumann, who was already living at 107 Ashmead when Mrs. Gordon commenced ownership and residency at 111 Ashmead.

Other successive owner/residents of 107 Ashmead testified similarly, acknowledging Randea Gordon frequently brought baked goods, but they all testified that they could not recall her addressing the use of the driveways. *See* N.T. at 32, 105-106. Nevertheless, the trial court, sitting as finder of fact, found credible and dispositive Randea Gordon's testimony that she overtly granted permission to use the Northern Driveway (West) to each new owner of 107 Ashmead when she first welcomed them to the neighborhood. On this record, we discern no reason to reverse the trial court's findings of fact.

In Sady and Fain's second question presented, they claim that even if the trial court appropriately determined that Randea Gordon communicated to 107 Ashmead owners that their rights to use the Northern Driveway (West) were conditioned on her permission, their evidence that the 1953 Deed memorializing the transfer of title from Melrose Country Club to the Daubs and containing a "Reservation" retained by the country club to access its "other land of seller," which they maintain is a reference to land in the northeast corner via the entire Northern Driveway deeded to the Daubs, now inures to the benefit of Sady and Fain as a common descendent in interest in the chain of title. By a plain reading of the Reservation, Sady and Fain's claim fails.

The reservation in the 1953 Deed provides:

> RESERVING thereout, however, unto the Seller, its Successors and Assigns, the free and common use, right, liberty and privilege of a Ten foot right of way along the Northerly boundary of above

described land with egress, ingress and regress unto and from said Ashmead Road to other land of seller and not to interfere therewith."

Exhibit P-1 and Exhibit P-2; R. Exhibits, 71, 90-91, 221-222.

The Reservation plainly and specifically limits its purpose and effect to ensuring that seller Melrose Country Club and its assigns and successors retain access to Melrose's "other lands" that lie outside the parcel conveyed by Melrose to the Daubs as memorialized in the 1953 Deed. Under this Reservation, Appellants Sady and Fain are successors in interest not of Melrose Country Club but of the Daubs, because they are owners of lands inside the parcel, namely 107 Ashmead Road, and have no interest in accessing "other lands" outside the parcel conveyed. Accordingly, by a plain reading of the Reservation itself, we discern this claim is without merit.

For the foregoing reasons, we affirm.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/6/2026